UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSE GREGORIO GUTIERREZ CABELLO, | * | |
| | * | |
| | * | |
| Petitioner, | * | |
| v. | * | |
| | * | |
| ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility; PATRICIA HYDE, Boston Acting Field Office Director; MICHAEL KROL, HSI New England Special Agent in Charge; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; and KRISTI NOEM, U.S. Secretary of Homeland Security, | * * * * * * * * * | Civil Action No. 1:25-cv-13213-IT |
| Respondents. | * | |
| | * | |

MEMORANDUM & ORDER

November 26, 2025

TALWANI, D.J.

Pending before the court is Petitioner Jose Gregorio Gutierrez Cabello's <u>Petition for Writ of Habeas Corpus</u> [Doc. No. 1]. For the reasons set forth below, the <u>Petition</u> [Doc. No. 1] is GRANTED.

**I.   Background**

Petitioner, a native and citizen of Venezuela, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Plymouth County Correctional Facility in Plymouth, Massachusetts. Decl. of Sarah Lapointe ¶¶ 5-6 [Doc. No. 12-1]; Decl. of Jose Gregorio Gutierrez Cabello ¶ 1[Doc. No. 15-2].

1

On or about December 2, 2023, Petitioner entered the United States without inspection. Lapointe Decl. ¶ 7 [Doc. No. 12-1]; Gutierrez Cabello Decl. ¶ 4 [Doc. No. 15-2]. That day, U.S. Customs and Border Protection ("CBP") issued Petitioner a Form I-860 Notice and Order of Expedited Removal and "detained him pursuant to 8 U.S.C. § 1225." Lapointe Decl. ¶ 8 [Doc. No. 12-1]. Petitioner was referred for a credible fear interview with U.S. Citizenship and Immigration Services ("USCIS") on or about December 4, 2023. Id. ¶ 9; Gutierrez Cabello Decl. ¶ 4 [Doc. No. 15-2]. USCIS interviewed Petitioner on or about December 11, 2023, and determined that Petitioner expressed a credible fear of persecution or torture in Venezuela. Lapointe Decl. ¶ 10 [Doc. No. 12-1]; Pet'r's Reply, Ex. 3, CLP Reasonable Possibility Determination Checklist 1-2 [Doc. No. 15-3].

On January 18, 2024, USCIS served Petitioner with a Notice to Appear before an immigration judge on July 16, 2024, in Boston, Massachusetts. Pet., Ex. 3, Notice to Appear 1 [Doc. No. 1-3]. "Upon issuance of the Notice to Appear, the Form I-860, Notice and Order of Expedited Removal was vacated." Lapointe Decl. ¶ 10 [Doc. No. 12-1]. On February 10, 2024, Petitioner was released from custody on an "interim notice authorizing parole under Section 212(d)(5)(A)[.]" Id. ¶ 12.

On September 28, 2025, Petitioner was involved in a vehicular accident while riding his moped. Gutierrez Cabello Decl. ¶ 6 [Doc. No. 15-2]. Responding police arranged for Petitioner to be transported to Salem Hospital in Salem, Massachusetts, where Petitioner stayed overnight after being diagnosed with "a concussion, a neck injury, and a twisted left ankle." Id. ¶¶ 6, 8. Petitioner was released from the hospital on September 29, 2025. Id. ¶ 9.

On September 30, 2025, officers with the Peabody Police Department escorted Petitioner to the police station because of various traffic citations he received in connection with the

accident. Id. ¶ 10.[1] After he arrived at the Peabody police station, officers told Petitioner that he was free to go. Gutierrez Cabello Decl. ¶ 10 [Doc. No. 15-2]. As Petitioner left the police station, ICE detained him. Id. ¶ 11.

That same day, ICE filed a "Form I-200, Warrant for Arrest of Alien." Lapointe Decl. ¶ 13 [Doc. No. 12-1]. Respondents state that Petitioner was "administratively arrested on the same day due to his violation of U.S. immigration laws." Id.

Petitioner was temporarily housed at an ICE office in Burlington, Massachusetts, during which time ICE completed an initial health questionnaire. Id. ¶¶ 13-14. Respondents report that "[a]t the time of his arrest by ICE, Petitioner claimed to be in good health" and that Petitioner "disclosed that he had surgery on his appendix a month ago, for which he was not taking medication[.]" Id. at 14. Respondents acknowledge, however, that "[a]fter his arrest, ICE became aware that he was released from Peabody Police Department's custody with paperwork showing that he was discharged from Salem Hospital the day before." Id. at 13. Respondents also note that Petitioner reported pain in his left ankle, neck, and shoulder, "was using crutches, . . . was non-weight bearing on his left ankle, and wore a neck brace." Id. ¶ 14. ICE's September 30, 2025 Record of Deportable / Inadmissible Alien ("Record") for Petitioner does not detail the above, but reports only for Petitioner's health status: "The subject claims good health." Pet., Ex. 4, Record of Deportable / Inadmissible Alien 1 [Doc. 1-4]. Nonetheless, the photograph of Petitioner included in the record shows that he is wearing a neck brace. Id.

ICE transferred Petitioner to Northwest State Correctional Center in Swanton, Vermont on October 2, 2025. Lapointe Decl. ¶ 15 [Doc. No. 12-1]; Gutierrez Cabello Decl. ¶ 13 [Doc. No.

---

[1] Respondents state that Petitioner was arrested for the following offenses: "Failure to Stop for Police[;] Marked Lanes Violation; Speeding Rate of Speed Exceeding Posted Limit; Motor Vehicle Operator Refusing to Identify Self; Reckless Operation of a Motor Vehicle; and Unlicensed Operation of a Moped." Lapointe Decl. ¶ 13 [Doc. No. 12-1].

15-2]. On October 21 or October 22, 2025, ICE transferred Petitioner to the Port Isabel
Processing Center in Los Fresnos, Texas "due to an administrative error." Lapointe Decl. ¶ 16
[Doc. No. 12-1]; Gutierrez Cabello Decl. ¶ 16 [Doc. No. 15-2]. Due to another "administrative
error," ICE next transferred Petitioner to the Alexandria Staging Facility in Alexandria,
Louisiana, on October 24, 2025. Lapointe Decl. ¶ 17 [Doc. No. 12-1]. On October 25, 2025, ICE
transferred Petitioner to the Mahoning County Justice Center in Youngstown, Ohio, "for routing
back to the Boston [Area of Responsibility]." Id.; see Gutierrez Cabello Decl. ¶ 18 [Doc. No. 15-
2]. On October 28, 2025, ICE transferred Petitioner back to the ICE office in Burlington,
Massachusetts and, later that day, moved Petitioner to the Plymouth County Correctional Facility
in Plymouth, Massachusetts. Lapointe Decl. ¶ 18 [Doc. No. 12-1]; Gutierrez Cabello Decl. ¶ 20
[Doc. No. 15-2].

On October 30, 2025, Petitioner filed the pending Petition for Writ of Habeas Corpus
[Doc. No. 1].

## II.    Discussion

Petitioner claims, inter alia, that he is subject to detention only under 8 U.S.C. § 1226(a)
and is therefore entitled to a custody redetermination hearing (a "bond hearing"). Pet. ¶¶ 30-31
[Doc. No. 1]. Petitioner further asserts that his detention without a bond hearing violates his Fifth
Amendment right to due process. Id. ¶¶ 54-70. Respondents contend that Petitioner is lawfully
detained under 8 U.S.C. § 1225(b)(1) and that his detention does not offend procedural or
substantive due process. Opp'n 5, 9, 13 [Doc. No. 12].

### A.    Petitioner's Detention

Section 1225 "authorizes the detention of certain aliens seeking to enter the country."
Jennings v. Rodriguez, 583 U.S. 281, 281 (2018). Under Section 1225, an alien seeking

admission to the country who has raised a claim of credible fear of prosecution must be detained pending a final determination of that claim. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Aliens detained under Section 1225 "ha[ve] only those rights regarding admission that Congress has provided by statute." Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 140 (2020).

"Once an alien enters the country," however, "the legal circumstance changes," and the alien's detention must be in accordance with due process. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent."). When individuals are already in the country, their detention is pursuant to 8 U.S.C. § 1226. See Jennings, 583 U.S. at 289 (Section 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings" (emphasis added)).

When Petitioner entered the country without inspection on or about December 2, 2023, he was detained under Section 1225 and therefore subject to mandatory detention. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). From this uncontested starting point, Respondents conclude that, when Petitioner was "released . . .  from custody on an interim notice authorize parole under Section 212(d)(5)(A)" on February 10, 2024, Lapointe Declaration ¶ 12 [Doc. No. 12-1], his status as an arriving alien subject to Section 1225 persisted. See Opp'n 7-8 [Doc. No. 12]. Accordingly, Respondents assert that when Petitioner's parole ended on February 8, 2025, his status reverted to that of an arriving alien subject to mandatory detention under Section 1225. Id. at 7 (citing Jennings, 583 U.S. at 288).

But Respondents' position as to Petitioner's ongoing status under Section 1225 is not borne out by the record. According to the affidavit submitted by Respondents, when USCIS served Petitioner with a Notice to Appear following the determination as to Petitioner's credible

fear claim, "the Form I-860, Notice and Order of Expedited Removal <u>was vacated</u>." Lapointe Decl. ¶ 10 [Doc. No. 12-1] (emphasis added). On the Notice to Appear itself, issued on January 18, 2024, Respondents' representative, when selecting Petitioner's status, marked that Petitioner is "an alien present in the United States, who has not been admitted or paroled," rather than "an arriving alien." Pet., Ex. 3, Notice to Appear 1 [Doc. No. 1-3]. Thus, when Petitioner was paroled on February 8, 2024, his status was that of an "alien present in the United States, who has not been admitted or paroled," <u>see id.</u>, and any detention of Petitioner would necessarily fall under Section 1226. <u>See</u> <u>Jennings</u>, 583 U.S. at 289.

Defendants are correct in their assertion that, when Petitioner's parole ended on February 18, 2025, he "returned to the custody from which he was paroled." <u>Id.</u> at 288. But, as the foregoing chain of events demonstrate, Petitioner was paroled as an alien subject to Section 1226, rather than as an alien subject to Section 1225. Accordingly, when Petitioner's parole ended on February 18, 2025, any future detention of Petitioner would be pursuant to the statutory requirements of Section 1226.[2]

The court thus concludes that Petitioner is subject to detention under Section 1226. <u>See</u> <u>Jennings</u>, 583 U.S. at 289. Both as a matter of statutory requirement and as a matter of due process, Petitioner is therefore entitled to a bond hearing. Petitioner's petition is GRANTED, as described <u>infra</u>.

### B. Petitioner's Due Process Claim as to His Health

---

[2] Petitioner also emphasizes that, when ICE arrested Petitioner on September 30, 2025, ICE did so pursuant to an I-200 Warrant for Arrest of Alien based on "the pendency of ongoing removal proceedings against the subject." Pet'r's Reply 4 [Doc. No. 15]; Pet'r's Reply, Ex. 3, Warrant for Arrest of Alien 1[Doc. No. 15-3]. Although Section 1226(a) requires that a warrant be obtained to arrest a non-citizen in removal proceedings, Section 1225 contains no such requirement. <u>Compare</u> 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending as decision on whether the alien is to be removed from the United States."), <u>with</u> <u>id.</u> § 1225 (making no mention of a warrant).

Petitioner asserts that Respondents have repeatedly demonstrated deliberate indifference to Petitioner's serious injuries and have thereby violated Petitioner's right to substantive due process. Pet. ¶ 67-68 [Doc. No. 1]; Pet'r's Reply 6-9 [Doc. No. 15]. Specifically, Petitioner contends that Respondents have both failed to provide adequate medical care for Petitioner's head and neck injuries and have "taken actions which have directly caused him further pain, suffering, and worsening of his injuries." Pet'r's Reply 6-7 [Doc. No. 15]. In his affidavit, Petitioner states that, inter alia, the chains he wore while being transferred "re-injured [his] neck and ankle" and caused both "constant pain" and "shocks of extra sharp pain in [his] neck" during transit; (2) staff at the Northwest State Correctional Center in Swanton, Vermont, "removed [his] neck brace" and "took [his] crutches, telling [Petitioner he] didn't need them anymore"; and (3) Petitioner has not received treatment at any facility "other than Tylenol," despite his "multiple" requests for medical treatment. Gutierrez Cabello Decl. ¶¶ 13-14, 24 [Doc. No. 15-2]. Petitioner further alleges that he is now experiencing short-term memory difficulties and dizziness and "cannot turn [his] head to the right without pain" in his neck. Id. ¶¶ 23-24.

Respondents do not directly address or refute Petitioner's claims of inadequate medical treatment and exacerbated injury. Instead, Respondents assert that Petitioner's claims are directed at his conditions of confinement and are therefore not cognizable as a habeas claim. Opp'n 13 [Doc. No. 12]. Where Petitioner has already demonstrated entitlement to a bond hearing on statutory and alternative due process grounds, the court need not address this dispute.

### III.   Order

The Petition for Writ of Habeas Corpus [Doc. No. 1] is GRANTED as follows: In light of Petitioner's alleged injuries, which Respondents have not addressed in their Opposition [Doc. No. 12], Respondents shall release Petitioner before 4:00 p.m. on Monday, December 1, 2025. If

Respondents seek to re-detain Petitioner, they may notice a bond hearing pursuant to 8 U.S.C.

§ 1226(a). Petitioner is ordered to attend any such bond hearing.

IT IS SO ORDERED.

November 26, 2025                          /s/ Indira Talwani
                                          United States District Judge